UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF VIRGINIA
ALEXANDRIA DIVISION

UNITED STATES OF AMERICA, Plaintiff,

v.

MARK S. DRESNER, Defendant.

Case 1:15-cr-00178
Alexandria, Virginia
January 27, 2016
11:00 a.m.
Pages 1 - 4

EXCERPT OF DEFENSE'S OPENING STATEMENT

BEFORE THE HONORABLE ANTHONY J. TRENGA

UNITED STATES DISTRICT COURT JUDGE

APPEARANCES:

FOR THE PLAINTIFF:

KOSTA S. STOJILKOVIC, ESQUIRE
N. NATHAN DIMOCK, ESQUIRE
MICHAEL T. O'NEILL, ESQUIRE
OFFICE OF THE UNITED STATES ATTORNEY
2100 Jamieson Avenue
Alexandria, Virginia 22314
(703) 299-3700

FOR THE DEFENDANT:

STEVEN T. WEBSTER, ESQUIRE
AARON S. BOOK, ESQUIRE
WEBSTER BOOK, LLP
300 North Washington Street, Suite 404
Alexandria, Virginia 22314
(888) 987-9991

THE DEFENDANT, MARK DRESNER, IN PERSON

COMPUTERIZED TRANSCRIPTION OF STENOGRAPHIC NOTES

OPENING STATEMENT

MR. WEBSTER: Thank you, Your Honor.

Your Honor, in terms of the government's proof, there will not be much dispute as to accounts that were set up, where money flowed, stock sales that were made, things like that. In fact, we've stipulated, as the Court knows, to, I think, just about every bank or brokerage document that they would seek to introduce. That is not going to be the issue in this case. The issue is going to be whether or not Mr. Dresner harbored an intent to defraud anybody or whether he was simply operating in good faith with people whom he knew and whom he trusted.

Mr. Dresner will testify, and that's what he will tell the Court, that he had known Mr. Zangara for some time; that with respect to the Moneyline account, it was, in fact, true that Mr. Zangara asked him to set it up; and that he directed Mr. Dresner when to do things with respect to the account; and that Mr. Dresner, who trusted Mr. Zangara, followed that instruction. Mr. Dresner will testify that he was not knowingly part of any pump-and-dump scheme; that his main role with respect to Nature's Peak -- which we should not forget and the evidence will show was a legitimate company with legitimate products --

I saw a filing from the government which said it had these purported -- it had these purported products in its trial brief. I did not understand the reference because there won't be any dispute that Nature's Peak, in fact, had legitimate products.

-- that Mr. Dresner believed in those products; and that he assisted with certain press releases in order to essentially advertise those products, if you will. Put the word "advertise" in quotes.

The press releases that he did were based on either research of the industry -- he would sometimes cite industry statistics about gluten free or natural foods -- and also facts that he confirmed about the company itself and its operations. The final arbiter of what would go out in any press release on behalf of Nature's Peak-Everock was the company itself. And Mr. Dresner did not control that, nor did he control the timing of it.

Those two points, the account that Mr. Dresner held for Mr. Zangara and at whose direction he would operate the account and the issue of these press releases and what he did with respect to these press releases for a legitimate product and a legitimate company, are going to be the crux of

Mr. Dresner's testimony.

I will not belabor our disputes with the government's view of these issues. That will become clear either through our cross-examination or in the testimony of Mr. Dresner. But at the end of the case, based on Mr. Dresner's operating in good faith with people whom he trusted and in retrospect should not have trusted, we will ask you to find Mr. Dresner not guilty.

THE COURT: All right. Thank you, Mr. Webster.

MR. WEBSTER: Thank you.

----------------------------------

Time: 11:04 a.m.

I certify that the foregoing is a true and accurate transcription of my stenographic notes.

/s/

Rhonda F. Montgomery, CCR, RPR